# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

In re:

**BAMC DEVELOPMENT HOLDING, LLC**

      **Debtor.**                             **Case No: 8:22-bk-1487-CPM**

_____

**BAMC DEVELOPMENT HOLDING, LLC, ROBERT PRESCOTT, 1802 W PLATT ST LLC, and TAMPA HYDE PARK CAFÉ PROPERTIES, LLC**

      **Appellants,**

**v.**                                   **Case No: 8:23-cv-2939-MSS**

**LARRY S. HYMAN as Chapter 7 Trustee, and WILMINGTON SAVINGS FUND SOCIETY, FSB,**

      **Appellees.**

_____

**BAMC DEVELOPMENT HOLDING, LLC, ROBERT PRESCOTT, 1802 W PLATT ST LLC, and TAMPA HYDE PARK CAFÉ PROPERTIES, LLC**

      **Appellants,**

**v.**                                   **Case No: 8:23-cv-2979-MSS**

**LARRY S. HYMAN as Chapter 7 Trustee,**

      **Appellee.**

_____

**BAMC DEVELOPMENT HOLDING, LLC, ROBERT PRESCOTT, 1802 W PLATT ST LLC, and TAMPA HYDE PARK CAFÉ PROPERTIES, LLC**

      **Appellants,**

**v.**                                       **Case No: 8:23-cv-119-MSS**

**LARRY S. HYMAN as Chapter 7 Trustee,**

      **Appellee.**

_____

## ORDER

    **THIS CAUSE** comes before the Court for consideration of three appeals by Appellants BAMC Development Holding, LLC, Robert Prescott, 1802 W Platt St LLC, and Tampa Hyde Park Café Properties, LLC ("Appellants"), which have been consolidated into one case for resolution. (Dkts. 1, 18, 21, 23, 24) Upon consideration of all relevant filings, the entire bankruptcy record, the Parties' briefs, and being otherwise fully advised, the Court **AFFIRMS** the bankruptcy court's rulings.

### I.    BACKGROUND

    Appellants challenge various orders of the bankruptcy court. In the first appeal,[1] Appellants challenge the bankruptcy court's order granting the Trustee's Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 (the "Original Sale Order") entered on November 6, 2023; (Dkt. 3-111) and the bankruptcy court's order denying motions for reconsideration of the Original Sale

---

[1] BAMC Development Holding, LLC et al. v. Hyman et al., Case No: 8:23-cv-2939-MSS.

Order (the "Order Denying Reconsideration") entered on December 11, 2023. (Dkt. 3-141) In the second appeal,[2] Appellants challenge the bankruptcy court's order granting the Trustee's emergency motion to modify the Original Sale Order (the "Modification Order") entered on December 11, 2023; (Dkt. 3-143) and the bankruptcy court's modified order granting the Trustee authority to sell property of the estate pursuant to 11 U.S.C. § 363 (the "Final Sale Order") entered on December 11, 2023. (Dkt. 3-144) In the third appeal,[3] Appellants challenge the bankruptcy court's order granting the Trustee's Motion to Approve Compromise Between the Chapter 7 Trustee and Wilmington (the "Order Approving Compromise") entered on December 11, 2023. (Dkt. 3-140)

The challenged orders relate to the bankruptcy court's decision to grant the trustee in BAMC Development Holding, LLC's Chapter 7 bankruptcy authority to sell certain property free and clear of liens, claims, and encumbrances. Appellants are BAMC Development Holding, LLC, Robert Prescott, 1802 W Platt St LLC, and Tampa Hyde Park Café Properties, LLC. Appellees are the Chapter 7 trustee, Larry Hyman ("Trustee Hyman" or the "Trustee"), and Wilmington Savings Fund Society, FSB.

By way of background, BAMC Development Holding, LLC (the "Debtor") filed for Chapter 11 Bankruptcy on April 13, 2022. (Dkt. 3-6) The Debtor's most valuable asset at the time it filed was real property located at 212 South Fremont

---

[2] BAMC Development Holding, LLC et al. v. Hyman, Case No: 8:23-cv-2979-MSS.
[3] BAMC Development Holding, LLC et al. v. Hyman, Case No: 8:23-cv-119-MSS.

Avenue, Tampa, Florida 33606 (the "Property"). (Dkt. 3-7) Other than the Property, the bankruptcy estate included a bank account containing about $14,564.00. (Dkt. 3-7)

The Property is subject to a first-priority mortgage held by Wilmington Savings Fund Society, FSB ("Wilmington"), (Dkt. 3-7; Dkt. 3-43), and a second-priority mortgage held by Robert Prescott ("Prescott"). (Dkt. 3-7 at 11) The Property is also subject to an option agreement that is contained in a lease agreement between the landlord, Christopher Scott ("Scott"), and the tenant, Tampa Hyde Park Cafe Properties, LLC ("THPCP"). (Dkt. 3-75) The lease agreement leased the Property to THPCP for a term of 25 years. (Id.) Under the option agreement, THPCP may purchase the Property for $200,000.00 if THPCP performs all of its covenants under the lease (the "Option"). (Id.) THPCP is an affiliate entity of the Debtor. (Dkt. 3-22 at 7, 9)

More than ten years ago, on June 30, 2013, Wilmington's predecessor-in-interest, First Nationwide Mortgage Corporation, filed a foreclosure action on the Property (the "Foreclosure Action"), which was then owned by Scott.[4] (Dkt. 3-15) On August 21, 2018, the state court granted a final judgment of foreclosure in the amount of $206,887.32 (the "Foreclosure Judgment") to MTGLQ Investors, L.P. ("MTGLQ"),[5] First Nationwide Mortgage Corporation's successor-in-interest that

---

[4] Complaint, Federal National Mortgage Association v. Scott, Case No. 13-CA-9150.
[5] Dkt. 63, Final Judgment of Foreclosure, Federal National Mortgage Association v. Scott, Case No. 13-CA-9150.

was then prosecuting the foreclosure.[6] (Dkt. 3-17, Ex. C at 3) The state court reserved ruling on the amount of attorney's fees to which MTGLQ was entitled. (Id. at 4) The state court scheduled a sale of the Property for September 27, 2018. (Id. at 3)

On September 19, 2018, a quitclaim deed that transferred title to the Property from the grantor, Scott, to the grantees, the Debtor and Scott, was recorded. (Dkt. 3-37) At that time, the Debtor was a debtor in a Chapter 11 bankruptcy.[7] (Dkt. 3-28; Dkt. 3-41, Ex. B at 5) The state court canceled the September 27, 2018 sale of the Property pursuant to the automatic stay. (Dkt. 3-41, Ex. B at 5)

The bankruptcy court dismissed the Debtor's 2018 bankruptcy in January 2019, and the stay expired. (Dkt. 3-41, Ex. C at 3; Dkt. 3-29) Meanwhile, Scott pursued an appeal of the Foreclosure Judgment, and the appellate court ultimately decided in MTGLQ's favor.[8] (Dkt. 3-30 at 1)

Then, from April 2020 to April 2022, MTGLQ sought an amendment of the Foreclosure Judgment in the state court to include attorney's fees and post-judgment advances and interest. (Dkt. 3-41, Ex. B) Several foreclosure sales were scheduled and canceled during this period. (Id.) The state court never amended the Foreclosure Judgment as MTGLQ requested. (Id.) Meanwhile, on September 29, 2021, Scott transferred his interest in the Property to the Debtor via quitclaim deed. (Dkt. 3-38) The Debtor became the sole owner of the Property.

---

[6] The Trustee represents in his Motion to Approve Compromise: "On November 2, 2017, the Court in the Foreclosure Action entered the Order on Motion to Substitute Party Plaintiff, which substituted [MTGLQ] as party plaintiff." (Dkt. 3-99 at 3 n.1)
[7] In re BAMC Development Holding, LLC, Case No. 8:18-bk-06643
[8] Scott v. MTGLQ Investors, L.P. et al., Case No. 2D2018-3817.

On April 11, 2022, the parties to the Foreclosure Action received notice from the state court setting a May 2, 2022 hearing on MTGLQ's motion to amend the Foreclosure Judgment to include post-judgment advances and interest. (Dkt. 3-41, Ex. B at 2) The Debtor filed its petition for Chapter 11 bankruptcy two days later, on April 13, 2022. (Dkt. 3-6)

Just before the Debtor filed its bankruptcy petition, on April 11, 2022, THPCP exercised the Option by executing a notice to that effect. (Dkt. 3-84, Ex. 2) About a year later, THPCP filed its own bankruptcy petition.

In May 2022, MTGLQ assigned its mortgage on the Property to Wilmington. (Dkt. 3-74 at ¶ 18) Wilmington continued MTGLQ's efforts to collect on the debt. In the bankruptcy action, Wilmington filed a motion to dismiss the bankruptcy case as a bad faith filing. (Dkt. 3-27) In the alternative, Wilmington sought relief from the stay. (Dkt. 3-27) The bankruptcy court granted Wilmington relief from the stay to allow it to continue to pursue an amendment of the Foreclosure Judgment to include post-judgment expenses, costs, fees, and interest in a state court appeal.[9] (Dkt. 3-47 at 2; 3-70) In the appeal, captioned MTGLQ Investors, L.P. v. Scott, Wilmington sought review of the state court's denial of the motion to amend the Foreclosure Judgment to include: post-judgment interest from the date of the Foreclosure Judgment through the date of an amended foreclosure judgment; payments of property taxes for 2018, 2019, 2020, and 2021; insurance disbursements from 2018 to 2022; auctioneer costs,

---

[9] See MTGLQ Investors, L.P. v. Scott, 2D2022-4053.

cancellation costs, "BPO/Appraisal Costs, 3rd Party Recoverable Fee disbursements;" attorneys' fees incurred in connection with the two appeals in the Foreclosure Action; attorneys' fees incurred in connection with the Debtor's two bankruptcy cases; attorneys' fees incurred in connection with canceling and rescheduling the foreclosure sale; and attorneys' fees incurred in seeking to have the Foreclosure Judgment amended. (Id.) Wilmington pursued this appeal in MTGLQ's name.[10]

Ultimately, the bankruptcy court ordered that the Debtor's case be converted from a Chapter 11 to a Chapter 7 bankruptcy under 11 U.S.C. § 1112(b). (Dkts. 3-61, 3-62) The Debtor appealed the order of conversion and the order denying the Debtor's related motion for reconsideration.[11] This Court affirmed the bankruptcy court's rulings. The Debtor's case has since proceeded as a Chapter 7 bankruptcy, with Trustee Hyman as trustee.

Meanwhile, THPCP was a debtor in its own bankruptcy case (the "THPCP Bankruptcy").[12] On May 19, 2023, the THPCP Bankruptcy court granted Trustee Hyman relief from the THPCP automatic stay to pursue relief in the Debtor's bankruptcy. (Dkt. 3-73) The order permitted Trustee Hyman to request in the Debtor's bankruptcy proceeding: rejection of the lease agreement between Scott and THPCP; rejection of the Option between the Debtor and THPCP; authority to sell the Property "free and clear of liens"; and leave to set aside the Option. (Id.) The THPCP

---

[10] See id.
[11] See BAMC Development Holding, LLC v. Wilmington Savings Fund Society, FSB, Case No. 8:23-cv-292-MSS.
[12] In re: Tampa Hyde Park Café Properties, LLC, Case No. 8:23-bk-00448-CED.

Bankruptcy court further ordered: "The [bankruptcy court in the Debtor's case] shall determine the extent, validity, and priority of any claimed liens *or interests* in the Property, including [THPCP]'s rights." (Id.) (emphasis added)

### a.  The Trustee's Motion to Sell the Property Under 11 U.S.C. § 363

On October 6, 2023, the Trustee filed its Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363. (Dkt. 3-84) The Trustee's proposed sale reflected the terms of a proposed compromise between the Trustee and Wilmington that had not yet been submitted to the bankruptcy court for review. Under the proposed sale, the Debtor's estate would receive a carve-out in an amount equal to the net sales price from the auction sale, minus $327,267.37, up to a maximum of $64,187.00 (the "Carve-Out"). (Id. at 12) The $327,267.37 would be paid to Wilmington in full satisfaction of Wilmington's allowed claim. (Id.) The estate would distribute the Carve-Out to unsecured creditors. (Id.) Any remaining proceeds would be held by the Trustee and distributed to the other creditors, including Prescott, upon order of the bankruptcy court. (Id.)

The Trustee argued that the sale of the Property free and clear of any interest in the Property would be permissible under 11 U.S.C. § 363(f). (Id. at 14) The Trustee contended the lienholders either consented to the sale, held liens or interests in bona fide dispute, or could be compelled, in a legal or equitable proceeding, to accept money in satisfaction of their interests. (Id.)

Other than THPCP's interest, the Trustee identified three categories of liens or interests in the Property. First, the Trustee identified Wilmington's first-position

mortgage and Prescott's second-position mortgage as the "mortgage liens." (Id. at 8–9) The Trustee noted the amount of Wilmington's allowed claim was $327,267.37. (Id.) Next, the Trustee identified several "other secured creditors," including the City of Tampa with a code enforcement lien and the IRS with a tax lien. (Id. at 9–10) The Trustee then identified several "liens against non-debtor." (Id. at 10–11) The Trustee explained he did "not believe such liens to be valid liens against the Debtor or the [Property] as it pertains to this estate." (Id. at 10)

Then, the Trustee noted that Wilmington and the IRS consented to the sale; these two creditors fell under § 363(f)(2). (Id. at 14) As for THPCP's interest, the Trustee argued that the interest was in bona fide dispute, so THPCP fell under § 363(f)(4). (Id. at 14–15) For the other secured creditors, including Prescott and the City of Tampa, the Trustee contended they could be compelled to accept money in satisfaction of their interests and thus fell under § 363(f)(5). (Id. at 15)

The Trustee maintained that THPCP's interest in the Property, *i.e.*, its exercised option to purchase the Property (the "Option interest"), was in bona fide dispute for five reasons. First, the Debtor and THPCP had not provided any evidence to the Trustee that THPCP had ever paid rent due under the lease and THPCP had objected to the discovery of any such evidence in the THPCP Bankruptcy. [13] (Id. at 14) The Trustee, therefore, asserted reason to believe that THPCP was in breach of the lease agreement and no longer entitled to exercise the Option. (Id.) Second, the Trustee

---

[13] In the Option Exercise and Ch. 11 Plan Sponsor Agreement between THPCP and the Debtor, the parties acknowledge that THPCP "owes $25,000 in deferred rent" to the Debtor. (Dkt. 3-76)

noted the lease agreement was between Scott and THPCP, and no assignment of the lease to the Debtor was ever produced. (Id. at 15) For this reason, the Trustee argued the Debtor's estate was not obligated to comply with the option provision of the lease. (Id.) Next, the Trustee asserted there was no evidence THPCP paid the down payment required to exercise the Option. (Id.) "When the Trustee requested proof that THPCP properly exercised the option to purchase and paid the required down payment, the Debtor provided a cashier's check from 'POPPI34FLORIDA LLC.' POPPI34FLORIDA LLC is an administratively dissolved Florida limited liability company that appears to be owned by Peter Hannouche."[14] (Id.) Fourth, the Trustee noted that the lease required, in the event the Option was exercised, the Property to be conveyed free from all encumbrances. (Id.) The Trustee explained that this would be impossible due to the many liens against the Property, including Wilmington's judgment. (Id.) Finally, the Trustee argued the Option and the exercise of the Option may be set aside pursuant to 11 U.S.C. § 548, which governs the trustee's power to avoid fraudulent transfers. (Id.)

The Debtor, THPCP, and Prescott filed objections to the Trustee's Motion.[15] (Dkts. 3-104, 3-105, 3-106) THPCP argued that the Property is not property of the Debtor's estate because THPCP held equitable title to the Property by way of its exercise of the Option. (Dkt. 3-104 at 4–5) THPCP also argued that under 11 U.S.C.

---

[14] Peter Hannouche is the managing member of THPCP. (Dkt. 3-76)
[15] The Court notes that the Debtor's and THPCP's objections were purportedly filed on behalf of the Debtor and THPCP. Because these entities were each in bankruptcy, however, neither entity had authority to file objections.

§ 365(i), THPCP has the right to remain in possession of the Property, make all payments due under the Option, and require that the Trustee deliver title to the Property to THPCP. (Id. at 10)

In the Debtor's objection, the Debtor posited that Wilmington did not have standing to pursue the state court appeal because the party-appellant in the proceeding is MTGLQ. (Dkt. 3-105 at 6) Accordingly, the Debtor explained that its counsel, Bart Meacham, had filed a motion to dismiss the appeal for lack of standing. (Id.) The Debtor argued the state appellate court was likely to dismiss the action for lack of standing, so Wilmington would not obtain the relief it sought in the state court appeal—post-judgment advances and expenses. (Id.) The Debtor asserted that after dismissal of the state court appeal, Wilmington's claim would only be $206,887.32, the amount of the Foreclosure Judgment. (Id.) In that event, the proposed sale would result in an unfair windfall to Wilmington. (Id.)

Prescott objected on grounds that the proposed sale did not appear to acknowledge Prescott's second-position mortgage. (Dkt. 3-106 at 4) Prescott shared the Debtor's belief that Wilmington was only entitled to a claim equal to the amount of the Foreclosure Judgment. (Id.) Prescott argued the proposed sale would award Wilmington more than the amount to which it was entitled and divert the Carve-Out to the estate, leaving Prescott with potentially no distribution from the sale. (Id.) Thus, Prescott believed the proposed sale violated his priority position among the creditors. (Id.) Prescott objected to the Trustee's conclusion that Prescott could be compelled, in

11

a legal or equitable proceeding, to accept money in satisfaction of his interest, but provided no legal or factual basis for this objection. (Id. at 5)

Prescott apparently filed his objection *pro se*, and he filed it on the day of the hearing held on the Trustee's Motion, October 30, 2023.[16] (Id.; Dkt. 3-98) His objection was not signed with a hand-written signature. (Dkt. 3-106)

At the outset of the hearing, the bankruptcy court noted that the Debtor's motion to dismiss in the state court appeal was improperly filed because the motion was filed by a debtor in bankruptcy, rather than by the Trustee on behalf of the Debtor's estate. (Dkt. 3-125 at 12:4-8) The bankruptcy court further noted that if Mr. Meacham meant to file the motion on behalf of equity-holders in the Debtor, these equity-holders had not been granted relief from the automatic stay to interfere with the state court appeal. (Id.) Accordingly, the bankruptcy court overruled the Debtor's objection, which the bankruptcy court seems to have construed as an objection filed by the equity-holders of the Debtor (the "Debtor's equity").

The bankruptcy court declined to consider Prescott's objection because it was not signed pursuant to Fed. R. Bankr. P. 9011(a). (Id. at 15:25–16:1; Dkt. 3-111) Notably, after hearing from the parties, the bankruptcy court was left with the

---

[16] About one week after the hearing, on November 6, 2023, Mr. Meacham, filed a notice of appearance as counsel for Prescott. (Dkt. 3-109) Also on this day, Mr. Meacham filed additional objections to the Trustee's Motion on Prescott's behalf. (Dkt. 3-110) These additional objections were that the proposed sale did not account for Prescott's statutory or equitable rights of redemption and the proposed sale did not account for "all redemption and other rights and interests in or related to the [Property] being held by others, including the ownership rights and interests in the [Property]." (Id.) Mr. Meacham also filed the Debtor's and THPCP's objections. (Dkts. 3-104; 3-105)

impression that Thomas Ortiz, a party-in-interest in the Debtor's bankruptcy,[17] emailed the objection to Prescott for him to sign, which he did electronically. (Dkt. 3-125 at 6–7)

Next, the bankruptcy court determined that THPCP's objection was improperly filed because the THPCP Bankruptcy trustee did not file the objection and did not approve of filing the objection. (Dkt. 3-125 at 23–24) The bankruptcy court explained that if THPCP's estate owned the Option interest, the THPCP bankruptcy trustee was the party with the authority to file an objection on that basis. (Id. at 17:22–18:4)

In response, Mr. Meacham asserted he intended to file the objection on behalf of the equity-holders of THPCP ("THPCP's equity"). (Id. at 23) The bankruptcy court rejected this assertion finding that Mr. Meacham filed the objection on behalf of the THPCP estate, trying to block a sale of the estate's asset. (Id. at 23:20-24) Thus, the bankruptcy court maintained its position that THPCP's objection could be overruled because it was improperly filed. (See id.)

Next, Mr. Meacham noted that THPCP's trustee did not receive notice of the Trustee's Motion. (Id. at 18, 20:11-25) To remedy this potential defect in notice, (id. at 21:18), the bankruptcy court called counsel for the THPCP Bankruptcy's trustee, Mr. Johnson. (Id. at 35) Mr. Johnson told the bankruptcy court that an order approving THPCP's sale of all of its assets to Hyde Park Café, LLC "[became] final and non-appealable today," October 30, 2023. (Id. at 36:2-10) The sale of THPCP's

---

[17] Mr. Meacham stated at the hearing, "Mr. Ortiz is BAMC." (Dkt. 3-125 at 14:12)

assets was to occur within 45 days. (Id. at 36:11-16) The bankruptcy court asked Mr. Johnson, "So is it fair to say that you are not in a position to either oppose or approve of the sale that the Trustee in my case is proposing?" (Id. at 36:22-24) He replied in the affirmative. (Id. at 36:25; id. at 47:5-10) The bankruptcy court considered this exchange with counsel for the THPCP Bankruptcy's trustee sufficient to satisfy the Bankruptcy Code's notice requirement under the circumstances. (Id. at 37)

Ultimately, the bankruptcy court concluded THPCP's interest in the Property, the Option interest, was in bona fide dispute. (Id. at 53:3-9) The bankruptcy court also concluded that the lienholders who had not consented to the sale could be compelled to accept money in satisfaction of their interests in a hypothetical legal or equitable proceeding. (Id. at 45–46) Accordingly, the Court granted the Motion and authorized the Trustee to proceed with the proposed auction sale in the Original Sale Order. (Dkt. 3-111)

THPCP and Hyde Park Café, LLC filed a joint motion for reconsideration regarding the Original Sale Order. (Dkts. 3-121; 3-125 at 36:2-10) The motion did not indicate that it was filed on behalf of THPCP's equity, rather than THPCP as a debtor in bankruptcy. This Court assumes, however, that the motion represents the positions of THPCP's equity, rather the THPCP bankruptcy trustee because it was filed by Mr. Meacham, who represents THPCP's equity and does not represent the THPCP bankruptcy trustee. In their motion, Hyde Park Café and THPCP's equity raised the following as bases for reconsideration:

- Hyde Park Café, LLC and THPCP's equity complained that they did not receive notice of the October 30, 2023 hearing on the Trustee's Motion for authority to sell the Property. (Dkt. 3-121)

- THPCP's equity sought reconsideration of the bankruptcy court's decision to overrule THPCP's objection on the basis that it was not filed by the THPCP Bankruptcy trustee. (Id.) In support of its position, THPCP noted that its equity-holders had the right to object to the Motion on their own behalf because the THPCP Bankruptcy had the potential to result in a surplus estate. (Id.)

- Hyde Park Café, LLC and THPCP's equity argued Trustee Hyman was barred from selling the Property because Trustee Hyman did not object to the sale of THPCP's assets in the THPCP Bankruptcy despite being a party to the proceedings. (Id.)

- Hyde Park Café, LLC and THPCP's equity asserted that the bankruptcy court's approval of the proposed sale violated 11 U.S.C. §§ 363(e), 363(h), and 363(i). (Id.)

- Hyde Park Café, LLC and THPCP's equity noted the state court presiding over Wilmington's appeal had advised it would refrain from taking any action until a party to the appeal received stay relief. (Id.) They contended the state court did so because the bankruptcy court had granted Wilmington stay relief, but Wilmington pursued the state court

15

appeal in MTGLQ's name. Thus, the state court indicated it understood that the party-appellant, MTGLQ, had not been granted stay relief. Hyde Park Café, LLC and THPCP's equity believed the state court's order abstaining from considering the appeal made it "more clear . . . that Wilmington's claim is fixed at $206,887.32, plus interest at the statutory rate since" the date of the Foreclosure Judgment. (Id.)

The Debtor's equity and Prescott each filed their own motions for reconsideration regarding the Original Sale Order. (Dkts. 3-122; 3-123) These motions repeated the following arguments by Hyde Park Café, LLC and THPCP's equity:

- Trustee Hyman was barred from selling the Property because Trustee Hyman did not object to the sale of THPCP's assets in the THPCP Bankruptcy despite being a party.

- The bankruptcy court's approval of the proposed sale violated 11 U.S.C. § 363(e).

- Wilmington's claim is fixed at $206,887.32, plus interest at the statutory rate since the date of the Foreclosure Judgment. (Id.)

Prescott also raised 11 U.S.C. § 363(k) as a basis for reconsideration of the bankruptcy court's order. (Dkt. 3-123)

The bankruptcy court heard the motions for reconsideration at a hearing on November 30, 2023. The bankruptcy court reasoned that Hyde Park Café, LLC was not entitled to notice of the hearing on the Trustee's Motion for authority to sell the

Property under § 363 because Hyde Park Café, LLC had not yet acquired any rights in the Property at the time the hearing was set or held. (Dkt. 3-154 at 94:15–95:7; 101:10-23) The bankruptcy court also clarified for the record that Hyde Park Café, LLC is owned by Peter Hannouche, the managing member of THPCP. (Id. at 108:19-23) Then, the bankruptcy court noted that it had either already considered the other arguments by Hyde Park Café, LLC and THPCP's equity at the hearing, or they were new arguments improperly raised in a motion for reconsideration. (Id. at 94–97; id. at 114:9–115:3) Otherwise, the remaining arguments were based on purported "new evidence" that did not exist at the time of the hearing. (Id.)

As for Prescott, the bankruptcy court ruled that most of his arguments were already considered at the hearing. (Id. at 99:23–101:2) Although a new legal argument, the bankruptcy court considered Mr. Meacham's argument that Prescott has a right to bid his claim to the Property under § 363(k). But, the bankruptcy court explained, § 363(k) merely permits Prescott to bid a competitive price at the auction sale, pay off Wilmington first, and then credit the amount of his claim against the remaining amount of the net sales price, if any. (Id. at 120–121) See 11 U.S.C. § 363(k). The bankruptcy court found Prescott did not offer a basis for reconsideration.

For the reasons stated at the hearing, the bankruptcy court denied the motions for reconsideration. (Dkt. 3-141)

### b. The Trustee's Motion to Approve Compromise

On October 13, 2023, the Trustee filed a Motion to Approve Compromise of Controversy Between the Chapter 7 Trustee and Wilmington. (Dkt. 3-99) In the

Motion, the Trustee noted the amount of Wilmington's allowed claim was $327,267.37. (Id.) This claim amount included the amount of the Foreclosure Judgment, $206,887.32, as well as post-judgment expenses and interest to which Wilmington asserted it was entitled. (Id.) The Trustee noted that as of October 1, 2023, Wilmington asserted a total amount due of $391,454.14, upon which interest would continue to accrue. (Id.) Additionally, the Trustee noted that Wilmington's claim would continue to expand as Wilmington continued to expend resources to defend its interests in the bankruptcy, the bankruptcy appeal, and the state court appeal. (Id.)

In the Motion, the Trustee represented that the Trustee and Wilmington agreed to a compromise to settle their disputes and resolve Wilmington's claim, the Foreclosure Action, and the state court appeal. (Id.) Under the proposed compromise, Wilmington would consent to the sale of the Property free and clear of liens. (Id.) As explained in the Trustee's Motion for Authority to Sell the Property, after a proposed auction sale, the Debtor's estate would receive the Carve-Out (an amount equal to the net sales price from the auction sale, minus $327,267.37, up to a maximum of $64,187.00). (Id. at 12) The $327,267.37 would be paid to Wilmington in full satisfaction of Wilmington's allowed claim. (Id.) Any remaining proceeds would be distributed to the junior creditors based on their priority and upon order of the bankruptcy court. (Id.) In exchange for guaranteed satisfaction of its allowed claim, Wilmington would dismiss the Foreclosure Action and the state court appeal. (Id.) Additionally, the Trustee represented that it and Wilmington would each agree to release the other from liability as it relates to the Property. (Id.)

18

Prescott filed an objection to the Trustee's Motion. (Dkt. 3-112) In the objection, Prescott asserted the amount of his claim equaled $276,343.86 plus interest. (Id.) Prescott maintained that the amount of Wilmington's claim was only $206,887.32, the amount of the Foreclosure Judgment, plus interest at the statutory rate since the date of the Foreclosure Judgment. (Id.) Prescott objected to the proposed compromise because it would guarantee Wilmington $327,267.37, instead of the $206,887.32 to which Prescott argued Wilmington was entitled. (Id.) Prescott also objected because he understood the proposed compromise to entitle him to receive nothing from the sale of the Property. (Id.) Finally, Prescott objected on the basis that the proposed compromise did not account for his statutory or equitable rights of redemption. (Id.)

The Debtor's equity filed a joinder regarding Prescott's objection to the Trustee's Motion to Approve Compromise. (Dkt. 3-132) The Debtor's equity added to the objection that the equity believed the Trustee was not the owner of any beneficial interest in the Property; instead, the Trustee held legal title. (Id.)

Hyde Park Café LLC and THPCP joined in the Debtor's equity's joinder and in Prescott's objection. (Dkt. 3-133) Hyde Park Café, LLC and THPCP did not raise any separate objections of their own. (Id.)

The bankruptcy court set the Trustee's Motion for a hearing on November 30, 2023. (Dkt. 3-119) For reasons stated on the record at the hearing, the bankruptcy court granted the Trustee's Motion. (Dkt. 3-140) At the hearing, the Trustee's counsel argued the proposed compromise was reasonable in light of the potential for Wilmington's claim to exceed $400,000.00, the Property's approximate value. First,

19

the Trustee's counsel asserted that post-judgment interest at the "lowest possible" statutory rate on the Foreclosure Judgment yielded a total judgment amount of $272,805.36. (Dkt. 3-154 at 9–10) Next, the Trustee noted the amount of Wilmington's claim would increase once post-judgment attorneys' fees were added pursuant to § 57.115, Fla. Stat. (2024). (Id. at 10:8-15) Additionally, the Trustee noted that the state court appeal concerned Wilmington's right to collect attorneys' fees incurred before the entry of the Foreclosure Judgment; if Wilmington succeeded in the state court appeal, the amount of the judgment could be even greater. (Id. at 10:17-21) Finally, the Trustee noted that the amount of post-judgment fees to which Wilmington was entitled under the loan documents had not yet been determined. (Id. at 12:6-17) This amount would include any fees awarded by an appellate court or incurred in a bankruptcy proceeding. (Id. at 26:19–27:3) But the Trustee maintained, "[At a] bare minimum, if they don't get a penny of attorneys' fees and they get stuck with the lowest possible interest rate, they're at $272,805.36."[18] (Id. at 11:1-3)

The Trustee argued that based on the foregoing, Wilmington's claim could exceed all the equity in the Property, leaving Prescott and the other junior creditors with nothing. (Id. at 12:24–13:6) The Trustee maintained that the proposed compromise limited Wilmington's recovery to the amount of its allowed claim,

---

[18] The representation that the statutory rate of interest in place on August 21, 2018, 5.97%, was the "lowest possible interest rate" is inaccurate. During the time between the entry of the Foreclosure Judgment and the proposed sale, the statutory rate of interest first increased, but then decreased to 4.25% and held steady at 4.25% for an entire year. See *Judgment Interest Rates*, MYFLORIDACFO.COM, https://myfloridacfo.com/division/aa/audits-reports/judgment-interest-rates.

provided the estate with a Carve-Out, and reserved any remaining proceeds for the junior creditors, including Prescott. (Id. at 14:5-6; 42:4-11)

Mr. Meacham responded by arguing that Wilmington had no standing to pursue the state court appeal and that for this reason, Wilmington was certain to lose on appeal. (Id. at 17:1-3) The bankruptcy court dismissed his argument, noting the bankruptcy court's willingness to amend the order granting stay relief to clarify that Wilmington—itself or in the name of a predecessor- or successor-in-interest—was granted relief from the stay to pursue the state court appeal. (Id. at 17:4-8, 17:14-17) The bankruptcy court concluded such an amendment would resolve the standing issue.

After entertaining argument from Mr. Meacham and counsel for the Trustee as to the merits of the state court appeal, (id. at 20–26; 28–30), the bankruptcy court sought to determine the amount of Wilmington's actual claim, and whether it exceeded the settlement amount, *i.e.*, the amount of Wilmington's allowed claim plus the amount of the Carve-Out, $391,454.37. If it did, the bankruptcy court reasoned, Prescott's objection would be moot. With assistance from the parties, the bankruptcy court roughly calculated the amount of the Foreclosure Judgment, post-judgment interest at the statutory rate, and property taxes paid by Wilmington on the Property to be $295,692.20 (Id. at 49) The bankruptcy court then added the amount of insurance Wilmington paid for the Property pre-petition, $7,432.41. (Id. at 50) Next, the bankruptcy court added an estimated amount of only a portion of attorneys' fees expended pursuing Wilmington's rights in the bankruptcy, $10,000. (Id. at 51) Finally, the bankruptcy court added an amount of attorneys' fees incurred post-judgment, pre-

petition, in the amount of $21,508.00, that Wilmington included in its proof of claim. (Id. at 52) This totaled $334,632.61.

Mr. Meacham argued that Wilmington was not entitled to recover various post-judgment expenses because it was Wilmington's predecessors-in-interest that expended those amounts. (Id. at 53:1-6) The bankruptcy court dismissed this argument. (Id. at 53:7-11) Relying on Tamblyn v. River Bend Marine, Inc., 837 F.2d 447 (11th Cir. 1988), the bankruptcy court concluded that Wilmington would be entitled to recover all attorneys' fees expended in protecting its interest in the Property, including those expended by its predecessors-in-interest. (Id. at 61:20-25; 62:1-7)

Thus, the bankruptcy court concluded that based on its calculation, Wilmington's claim exceeded the amount for which it agreed to settle under the proposed compromise. (Id. at 53:18–54:5) The bankruptcy court also noted that the calculation did not include all attorneys' fees Wilmington had incurred post-judgment. (Id. at 59:1-4)

Then, Mr. Meacham argued that the Rooker-Feldman doctrine of abstention barred the bankruptcy court from awarding post-judgment fees and costs not included in the Foreclosure Judgment. (Id. at 63:9-24) The bankruptcy court dismissed this argument because the state court appeal was still pending; for this reason, the bankruptcy court concluded Rooker-Feldman did not apply to the proceedings before the bankruptcy court. (Id. at 64:11-12)

The Trustee's counsel directed the bankruptcy court to the factors enumerated in In re Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990), which a bankruptcy court

22

considers when determining whether to approve a settlement or compromise. (Id. at 66:7-8) As for the first factor, the probability of success in the litigation, the bankruptcy court noted that it would be "preposterous" if the state court's denial of Wilmington's motion to amend the Foreclosure Judgment to include post-judgment fees, costs, and interest meant that such fees, costs, and interest would not accrue. (Id. at 74:8–75:1) The bankruptcy court indicated it weighed this factor in favor of approving the proposed compromise. Next, the bankruptcy court considered the difficulties, if any, to be encountered in the matter of collection. (Id. at 75:2-3) The bankruptcy court noted that the Trustee "would not get a dime" if Wilmington's claim were not subject to the Carve-Out. (Id. at 75:2-14) "[A]bsent the compromise, there would be nothing to collect." (Id. at 75:13-14) The bankruptcy court weighed the third factor, the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, in favor of approving the proposed compromise, noting that forcing the appeal to go forward would result in delay and Wilmington continuing to incur expense. (Id. at 75:15-20) The bankruptcy court also stated its belief that the issues were not unduly complex. (Id. at 75:21-23) Finally, the bankruptcy court considered the fourth factor, the paramount interests of the creditors and a proper deference to their reasonable views. The bankruptcy court noted the proposed compromise benefitted the unsecured creditors. (Id. at 76:4-21) The bankruptcy court also noted that based on the rough calculation done at the hearing, absent the proposed compromise, Prescott was either going to be out of the money entirely or stood very little to gain. (Id. at 76:12-14)

23

The bankruptcy court concluded that the Justice Oaks factors weighed in favor of approving the proposed compromise and explained that it believed the proposed compromise should be approved. (Id. at 93:1-2)

The bankruptcy court also noted that the Debtor's estate chose not to defend against Wilmington's state court appeal, and that Wilmington had agreed to share money with the estate in lieu of incurring additional attorneys' fees. (Id. at 73:8-14) Additionally, the bankruptcy court noted that Prescott never intervened in the foreclosure or in the state court appeal, and that his objections filed in the Debtor's bankruptcy appeared to be written by someone else. (Id. at 73:15-22)

Accordingly, the bankruptcy court granted the Trustee's Motion in the Order Approving Compromise. (Dkt. 3-140)

### c. The Trustee's Emergency Motion to Modify the Original Sale Order

On December 11, 2023, the Trustee requested the Court modify the Original Sale Order. (Dkt. 3-136) In the Motion, the Trustee explained that the Property had been auctioned on December 6, 2023. (Id.) The highest bid at the auction was $506,000.00. (Id.) The Trustee requested that the Original Sale Order be amended to provide the successful bidder with relief pursuant to 11 U.S.C. § 363(m); to add the legal description of the Property; to provide that the sale is free and clear of potential defects in prior deeds; and to provide that the Trustee is authorized to execute any deed relative to the sale. (Id.)

The bankruptcy court granted the Trustee's Motion in full, (Dkt. 3-142), and entered the Final Sale Order. (Dkt. 3-143)

## II.    STANDARD OF REVIEW

In reviewing bankruptcy court judgments, a district court functions as an appellate court. 28 U.S.C. § 158(a); see also In re Coady, 588 F.3d 1312, 1315 (11th Cir. 2009). It reviews the bankruptcy court's legal conclusions *de novo* but must accept the bankruptcy court's factual findings unless they are clearly erroneous.  In re Chira, 567 F.3d 1307, 1310–11 (11th Cir. 2009). "[A] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). "If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). The district court also reviews *de novo* the bankruptcy court's determinations as to the legal significance accorded to the facts. In re Sunshine-Jr. Stores, Inc., 198 B.R. 823, 825 (M.D. Fla. 1996). In hearing a bankruptcy appeal, the district court may reverse, affirm, or modify only on issues actually presented to the trial judge. In re Gardner, 455 F. Supp. 327, 329 (N.D. Ala. 1978).

## III.    DISCUSSION

Appellants raise a multitude of issues on appeal related to the proceedings and the orders of the bankruptcy court. These issues are:[19]

---

[19] In one of Appellants' reply briefs, (Dkt. 31), Appellants indicate they withdraw the following issue on appeal: Whether the bankruptcy court committed legal error since the Final Sale Order allows the

1. Were the Modification Order and Final Sale Order entered in violation of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Appellants' right to due process, notice, and the opportunity to be heard? (Dkt. 24)

2. Was the Motion to Sell served on THPCP and Hyde Park Café, LLC in the manner and method required by law? (Dkt. 23) Was notice of the hearing on October 30, 2023 served on THPCP and Hyde Park Café, LLC in the manner and method required by law? (Dkt. 23)

3. Did the Motion to Sell include all necessary allegations for the relief granted by the court? (Dkt. 23)

4. Did the bankruptcy court commit legal error in authorizing the sale of the Property or in approving the compromise without determining that THPCP's or Hyde Park Café, LLC's beneficial interest in the Property was "property of the estate", as required by 11 U.S.C. § 363(b)? (Dkts. 21, 23) Is THPCP's or Hyde Park Café, LLC's equitable interest property of the Debtor's estate? (Dkt. 21) Did the bankruptcy court commit legal error in authorizing the sale of the beneficial interest in the Property since such interest is not "property of the estate"? (Dkt. 23)

5. Did the court commit legal error in authorizing the sale of THPCP's or Hyde Park Café, LLC's beneficial interest in the Property because it is not the type or kind of interest in property that can be sold under 11 U.S.C. § 363(h)? (Dkt. 23)

6. Was Trustee Hyman's request to the sell THPCP's or Hyde Park Café, LLC's beneficial interest in Property precluded by *res judicata*, collateral estoppel, or both? (Dkt. 23)

7. Did Trustee Hyman have the power to sell, assume, assign, cancel, terminate, or otherwise treat the lease agreement between THPCP and Scott as property of the estate? (Dkt. 23)

8. Did the bankruptcy court commit legal error in ordering the sale of the Property without providing adequate protection of Prescott's, THPCP's, and Hyde Park Café, LLC's interests in the Property, as required by 11 U.S.C. § 363(e)? (Dkt. 23)

9. Did the bankruptcy court commit legal error in finding that THPCP's or Hyde Park Café, LLC's beneficial interest in the Property was in bona fide dispute under 11 U.S.C. § 363(f)(4) such that it could properly order

---

Property to be sold for less than the "aggregate value of all liens on such property," which is prohibited by 11 U.S.C. § 363(f)(3).

the sale of the Property over THPCP's and Hyde Park Café, LLC's objection? (Dkt. 23)

10.   Did the bankruptcy court commit legal error in finding that the Property could be sold, under 11 U.S.C. § 363(f)(5), free and clear of Prescott's interest? (Dkt. 23)

11.   Did the bankruptcy court commit legal error on grounds that there is no business justification for Trustee Hyman's sale of the Property? (Dkt. 23)

12.   Whether the bankruptcy court committed legal error by ruling that the Final Judgment is non-final for purposes of Rooker-Feldman. (Dkt. 21)

13.   Whether the bankruptcy court otherwise committed legal error as to the Justice Oaks factors. (Dkt. 21)

14.   Has there been a systematic violation of Appellants' right to due process of law? (Dkt. 24)

The Court reviews each issue in turn. First, however, the Court identifies a few legal principles that generally guide the analysis of Appellants' challenges.

The Bankruptcy Code authorizes a trustee to sell property of the estate "after notice and a hearing." 11 U.S.C. § 363(b)(1). Section 102(1)(A) of the Bankruptcy Code defines this phrase as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . ."

"Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property of the estate free and clear of certain claims, liens and interests, subject to certain conditions and limitations." In re MMH Automotive Grp., LLC, 385 B.R. 347, 361–62 (Bankr. S.D. Fla. 2008). A trustee may sell property of the estate free and clear of non-debtors' "interests" in the property, even interests in executory contracts, if one of the conditions of § 363(f) is met. Cf. id. at 363–67 (finding that property of the estate may be sold free and clear of a leasehold interest under § 363(f) even though § 365(h)

27

contains specific provisions dictating "the manner and procedure by which a debtor may terminate its interests in a lease").

Finally, bankruptcy courts are "'essentially courts of equity, and their proceedings [are] inherently proceedings in equity.'" In re Georgian Villa, Inc., 55 F.3d 1561, 1563 (11th Cir. 1995) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 240 (1934)). Nonetheless, "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.'" Id. (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)).

**a. Were the Modification Order and Final Sale Order entered in violation of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Appellants' right to due process, notice, and the opportunity to be heard?**

Appellants argue that the bankruptcy court's failure to hold a hearing on the Trustee's Motion to Modify the Original Sale Order violated Appellants' right to due process, notice, and the opportunity to be heard. Appellants assert some of the proposed modifications to the Original Sale Order would affect their substantive rights, but they were not given an opportunity to be heard. Appellants also assert that a bankruptcy court must hold a hearing before determining that a purchaser at a § 363(b) sale purchased the property in good faith under § 363(m), but the bankruptcy court did not hold a hearing here. Importantly, Appellants do not assert that the purchaser at the auction sale engaged in bad faith.

28

Appellants were not entitled to a hearing on the Trustee's Motion to Modify the Original Sale Order. In the Trustee's Motion, the Trustee requested that the Original Sale Order be amended to provide that the sale is free and clear of potential defects in prior deeds and to provide that the Trustee is authorized to execute any deed relative to the sale.[20] (Dkt. 3-136) These requested modifications did not affect Appellants' substantive rights. Thus, the Bankruptcy Code did not require that the bankruptcy court hold a hearing on the Motion. See 11 U.S.C. § 102(1)(A).

Appellants also challenge the bankruptcy court's order granting the Trustee's request that the Original Sale Order be modified to provide the successful bidder with relief pursuant to 11 U.S.C. § 363(m). Appellants assert that their appeal of the Original or Final Sale Orders cannot be statutorily moot under 11 U.S.C. § 363(m) because the bankruptcy court did not make an evidence-based factual finding that the purchase of the Property was a good faith purchase.

Under 11 U.S.C. § 363(m), an appellate court may not reverse or modify a bankruptcy court's authorization of a sale of estate property to a good faith purchaser unless the sale was stayed pending appeal. In re Belkova, No. 22-13786, 2024 WL 3069143, at *2 (11th Cir. 2024) (quoting 11 U.S.C. § 363(m)). Here, Appellants did not obtain a stay of the sale pending appeal. "The misconduct at a judicial sale that would destroy a buyer's good faith 'involves fraud, collusion between the purchasers and other bidders or the trustee, or an attempt to take generally unfair advantage of

---

[20] Appellants do not challenge the addition of the Property's legal description to the Final Sale Order. (Dkt. 30 at 4)

other bidders.'" In re Miami Gen. Hosp., Inc., 81 B.R. 682, 688 (S.D. Fla. 1988) (quoting In re Abbots Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986)). Absent evidence to suggest fraud and collusion on the part of the buyer, a good faith finding is appropriate. See id.

A finding of good faith is not an essential element for approval of a sale under § 363(b). In re Fitzgerald, 428 B.R. 872, 880 (B.A.P. 9th Cir. 2010). Nevertheless, an appeal is not moot under § 363(m) if the bankruptcy court merely included a "boilerplate 'good faith' finding" in a sale order "without an evidentiary foundation." Id. at 881. "'Unless and until 'good faith' has been determined, the appeal is not moot under section 363(m).'" Id. (quoting In re Thomas, 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002)). In Fitzgerald, the appellate court found "no evidence in the record to support a 'good faith' finding under section 363(m)." Id. at 880. "While Trustee noted in the Sale Motion that the sale was entered into in good faith, Trustee did not request such a finding in the Sale Motion, nor did [Trustee] submit a declaration or any other evidence supporting this fact." Id. at 880–81.

Here, the bankruptcy court did not make a factual finding based on evidence in the record that the sale was made in good faith. Thus, like in Fitzgerald, the bankruptcy court signed the order granting the successful bidder relief under § 363(m) "without an evidentiary foundation." Id. at 881. As a result, the § 363(m) safe harbor does not render Appellants' appeal moot.[21]

---

[21] The Court notes, however, that a bankruptcy court may not have to hold a hearing to determine that the evidence supports a finding that a purchase was made in good faith. The Fitzgerald court

**b. Was the Motion to Sell served on THPCP or Hyde Park Café, LLC in the manner and method required by law? Was notice of the hearing on October 30, 2023 served on THPCP or Hyde Park Café, LLC in the manner and method required by law?**

Appellants argue THPCP and Hyde Park Café, LLC did not receive notice of the Trustee's Motion for Authority to Sell the Property or of the hearing thereon. Appellants assert the Trustee's failure to serve notice to THPCP and Hyde Park Café, LLC was inexcusable because Trustee Hyman, as a party to THPCP's bankruptcy, knew Hyde Park Café, LLC had an equitable interest in all the assets in THPCP's estate, including the Option interest. Appellants also assert that the Trustee failed to give notice and an opportunity to be heard to THPCP, Hyde Park Café, LLC, and 1802 W Platt St LLC as to the Trustee's assertions that the Option interest was in bona fide dispute.[22] Notably, Appellants do not assert that THPCP's equity was entitled to legal notice. But the Court assumes Appellants mean to assert this challenge on THPCP's equity's behalf, rather than on behalf of the THPCP estate, because the THPCP estate was given the opportunity to be heard at the hearing when the bankruptcy court called Mr. Johnson.

The record supported the bankruptcy court's conclusion that the Trustee's Motion for authority to sell the Property and the notice of the hearing on the motion were properly served on THPCP's equity. "A motion for authority to sell property free

---

indicates that a declaration or affidavit from the Trustee as to the good-faith nature of the purchase may be sufficient, especially if it is not disputed. See id. at 880–81.

[22] Appellants represent that Hyde Park Café, LLC assigned its rights and interests in the Property to 1802 W Platt St LLC.

and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold." Fed. R. Bankr. P. 6004(c). Service made via first class mail satisfies the notice requirement of Rule 6004(c). Id. at 9014 and 7004(b). The Certificates of Service attached to the Trustee's Motion and the notice of hearing on the Motion state that true and correct copies of the Motion and the notice were served via First Class U.S. Mail to THPCP. (Dkt. 3-74 at 19–20) Peter Hannouche, THPCP's managing member, is also listed as a recipient of service. (Id.) Counsel for THPCP's equity, Mr. Meacham, appeared at the hearing held on the Motion and represented equity's interests. Thus, the Court is not persuaded that THPCP's equity did not receive adequate, proper notice or an opportunity to be heard that was appropriate under the circumstances. See 11 U.S.C. 102(1)(A).

As for Hyde Park Café, LLC, Appellants assert it was entitled to receive notice because it held an interest in the Property via its pending acquisition of THPCP's assets. The parties did not dispute that Hyde Park Café, LLC did not receive legal notice of the Trustee's Motion or the hearing held thereon. The sale of THPCP's assets had not closed at the time Trustee Hyman filed his motion for authority to sell the Property or at the time of the hearing. Nonetheless, Appellants argue that Hyde Park Café, LLC's contract to purchase THPCP's assets created an equitable interest in the Option interest, which Appellants assert vested before the Debtor filed its petition.

The bankruptcy court found that Hyde Park Café, LLC was not entitled to notice of the hearing on the Trustee's Motion because Hyde Park Café, LLC had not

yet acquired any rights in the Property at the time the hearing was set or held. Its anticipatory interest was insufficient to command a right of notice.

Even if Hyde Park Café, LLC were entitled to legal notice, the Court is not convinced that it did not receive legally sufficient notice. See Matter of Pence, 905 F.2d 1107, 1109 (7th Cir. 1990) (holding creditor with actual knowledge of bankruptcy petition "was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings").

In any event, the Court finds that a defect in Hyde Park Café, LLC's notice as to the Original Sale Order does not require disturbing the finality of the bankruptcy court's order.

When faced with a notice defect, some courts have

> fashion[ed] an equitable remedy by balancing the rights of the party whose interests have been compromised without notice, with the rights of a purchaser who relied on the selling party, the trustee . . . , to properly notify all parties in interest and who relied on a final order confirming the sale free and clear of all liens, claims and interests.

In re MMH, 385 B.R. at 359. Courts consider whether the party lacking legal notice had actual notice of the bankruptcy or the sale, the likelihood the party lacking notice would have received similar relief in the bankruptcy if it had received notice, whether the purchaser of the property at the sale is a bona fide purchaser, and the difficulty of voiding the sale. Id. at 359–61 (citing In re Edwards, 962 F.2d 641 (7th Cir. 1992); In re Metzger, 346 B.R. 806 (N.D. Cal. 2006); In re Polycel Liquidation, Inc., No. 00–

62780, 2006 WL 4452982 (D.N.J. Apr. 18, 2006)). The Court believes this approach to be appropriate under the circumstances presented here.

Assuming, *arguendo*, that it had an enforceable interest that was compromised without legal notice, the Court finds that Hyde Park Café, LLC's challenge fails. Balancing its rights against the rights of the auction purchaser who relied on the Trustee to properly notify all parties in interest and who relied on the Original and Final Sale Order, the Court determines that the Original and Final Sale Order should be **AFFIRMED.**

First, Hyde Park Café, LLC had actual notice of the sale. Mr. Hannouche is the managing member of THPCP and the owner of Hyde Park Café, LLC. The motion to approve the sale of THPCP's assets to Hyde Park Café, LLC in August 2023 was served on THPCP, Hyde Park Café, LLC, and Mr. Hannouche at 303 S. Melville Avenue, Tampa, Florida.[23] The THPCP trustee's motion was also served electronically on Mr. Meacham as counsel of record for THPCP in the THPCP case. In the Debtor's case, the Trustee's Motion for authority to sell the Property was delivered to Mr. Meacham, who represented THPCP's equity, *i.e.*, Mr. Hannouche, and Mr. Hannouche himself at 303 S. Melville Avenue. (Dkt. 3-74 at 19–20; 3-98 at 2–3) While Hyde Park Café, LLC was not listed as a recipient of service for the Trustee's Motion or the notice of hearing, the Court finds Hyde Park Café, LLC nonetheless had actual notice of the Trustee's intent to sell the Property. <u>See</u> 11 U.S.C.

---

[23] <u>See</u> Dkt. 297, <u>In re: Tampa Hyde Park Café Properties, LLC</u>, Case No. 8:23-bk-00448-CED.

§ 102(1)(A) (emphasis added) (defining "after notice and a hearing" as "after such notice *as is appropriate in the particular circumstances*, and such opportunity for a hearing as is appropriate in the particular circumstances").

Next, even if Hyde Park Café, LLC had received legal notice and appeared at the hearing on the Trustee's Motion to represent its anticipated future equitable interest in the Option, it is extremely unlikely that Hyde Park Café, LLC could have established that the Option interest was not in bona fide dispute under § 363(f)(4). As is discussed *infra*, the bankruptcy court properly authorized the Trustee to sell the Property free and clear of the Option interest because it was in bona fide dispute under § 363(f)(4). Thus, the outcome would not have changed.

As for the third consideration, whether the purchaser at the auction sale was a good-faith purchaser with the right to rely on the Trustee's having provided notice to all stakeholders, the record contains no evidence of any bad faith in the sale process. The consideration weighs in favor of upholding the sale.

Finally, the Court believes voiding the sale at this juncture would create difficulty, delay, and expense. On balance, these considerations persuade the Court not to disturb the finality of the bankruptcy court's Final Sale Order.[24] The bankruptcy court is **AFFIRMED** as to this issue.

---

[24] The Court notes in this regard that neither THPCP nor POPPI34FLORIDA LLC filed a proof of claim related to the alleged downpayment of $20,000 they now claim triggered the Option on the eve of bankruptcy. The Court reasons that if the parties were concerned with recovering this sum from the Debtor in the event the Option was not enforced, they would have filed a proof of claim for it.

**c. Did the Motion to Sell include all necessary allegations for the relief granted by the court?**

Appellants assert that "the allegations in paragraphs 62 to 68 of the Motion to Sell are materially false and do not provide a legal basis for setting aside anything." (Dkt. 23 at 32) Otherwise, Appellants make no argument as to this asserted issue on appeal. This bald assertion is insufficient to carry Appellant's burden on this appeal.[25] Notably, the bankruptcy court did not grant a motion to set aside any interest of an Appellant. The bankruptcy court is therefore **AFFIRMED** as to this issue.

**d. Did the bankruptcy court commit legal error in authorizing the sale of the Property or in approving the compromise without determining that THPCP's or Hyde Park Café, LLC's beneficial interest in the Property was "property of the estate", as required by 11 U.S.C. § 363(b)? Is THPCP's or Hyde Park Café, LLC's equitable interest property of the Debtor's estate?**

The bankruptcy court did not err by authorizing the sale of THPCP's or Hyde Park Café, LLC's interest in the Property because 11 U.S.C. § 363(f) authorizes the sale of estate property free and clear of interests of a non-debtor. Precision Industries, Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537, 544 (2d Cir. 2003) ("Subsection (f) makes clear that the property, under specified conditions, may be sold unencumbered of interests held by others . . . ."). Section 363(b) required Trustee Hyman to determine whether the Property was property of the estate. 11 U.S.C. § 363(b)(1) ("The trustee,

---

[25] The Court notes that the Trustee made the allegations in the Motion to Sell to support his position that the Option interest was in bona fide dispute. Appellants' assertion that they are false merely buttresses the Trustee's position that the validity of the interest is disputed.

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .").

It was not necessary for the bankruptcy court to determine that the Option interest was "property of the estate" under § 363(b) as long as the Option interest was *an interest in property* that was *property of the estate*. The Parties do not dispute that the Option interest was an interest in the Property. The Parties also do not dispute that legal title to the Property was property of the estate. Thus, § 363(f) authorized the Trustee to sell legal title to the Property unencumbered of any interest held by THPCP or Hyde Park Café, LLC.

Accordingly, the bankruptcy court is **AFFIRMED** on this basis.

> **e. Did the court commit legal error in authorizing the sale of THPCP's or Hyde Park Café, LLC's beneficial interest in the Property because it is not the type or kind of interest in property that can be sold under 11 U.S.C. § 363(h)?**

Appellants argue that the sale of THPCP's or Hyde Park Café, LLC's asserted beneficial interest in the Property is not authorized "because it is not the type or kind of interest in property that can be sold under 11 U.S.C. § 363(h) . . . ." (Dkt. 23 at 36) Section 363(h) is inapplicable to this case because the subsection "is triggered only when a trustee sells 'an undivided interest' the debtor shares with another entity 'as a tenant in common, joint tenant, or tenant in the entirety.'" Smith v. Slott, 683 F. Supp. 3d 1331, 1345 (S.D. Fla. 2023). The trustee is not required to "look to § 363(h) for permission to sell" property of the estate if the sale "separately satisfie[s] the requirements of § 363(f)." Id.; see also 11 U.S.C. § 363(h).

Here, the Debtor did not share its interest in the Property with any tenant in common, joint tenant, or tenant by the entirety; the Debtor owned the Property in fee simple, and Appellants argue THPCP or Hyde Park Café, LLC owned an equitable interest in the Property, the Option interest. See id. The Appellants admit throughout their briefs that any interest THPCP or Hyde Park Café, LLC assert in the Property is a beneficial or equitable interest. Tenants in common, joint tenants, and tenants by the entirety enjoy simultaneous, legal interests in property. Thus, § 363(h) did not apply to the sale of the Property free and clear of THPCP's or Hyde Park Café, LLC's interest.

The bankruptcy court is **AFFIRMED** as to this issue.

> **f. Was Trustee Hyman's request to the sell THPCP's or Hyde Park Café, LLC's beneficial interest in Property precluded by *res judicata*, collateral estoppel, or both?**

Appellants argue that because Trustee Hyman did not challenge the order authorizing the sale of THPCP's assets to Hyde Park Café, LLC in the THPCP Bankruptcy, Trustee Hyman was precluded from seeking authority to sell the Property in the Debtor's case free and clear of THPCP's or Hyde Park Café, LLC's interest. This challenge fails. The fact that the Option interest was to be transferred from THPCP to Hyde Park Café, LLC did not affect Trustee Hyman's ability to seek authority from the bankruptcy court to sell the Property free and clear of the interest. A bankruptcy trustee's authority to sell property of the estate under § 363 is not contingent on the identity of the interest-holder, as long as the interest-holder has notice of the trustee's intent to sell the property. Appellants provide the Court with no

reason to believe that the post-petition transfer of an interest of a non-debtor in property of the estate precludes the trustee from obtaining authority to sell the property of the estate free and clear of the interest if one of the conditions of § 363(f) is met and the new interest-holder has notice, as appropriate under 11 U.S.C. § 102(a)(1)(A).

The bankruptcy court is **AFFIRMED** as to this issue.

> **g. Did Trustee Hyman have the power to sell, assume, assign, cancel, terminate, or otherwise treat the lease agreement as property of the estate?**

Appellants argue Trustee Hyman lacked authority to sell the lease agreement or otherwise treat the leasehold as property of the estate because Trustee Hyman had rejected the lease agreement. Whether or not Trustee Hyman rejected the lease had no effect on his authority sell the Property free and clear of THPCP's interest in the Property as lessee under § 363(f). The term "any interest" as used in § 363(f) includes a lessee's possessory interest. Precision Industries, 327 F.3d at 545. Section 363(f) also governs the trustee's authority to sell estate property free and clear of a lessee's interest as a party to an executory contract. Cf. In re MMH, 385 B.R. at 361–62, 363–67. Thus, Trustee Hyman was authorized to sell the Property free and clear of THPCP's leasehold interest in the Property. See id. at 546. Although 365(h) limits the trustee's authority to evict a lessee, "the terms of section 365(h) do not supersede those of section 363(f)." Id. at 547.

The bankruptcy court is **AFFIRMED** as to this issue.

> **h. Did the bankruptcy court commit legal error in ordering the sale of the Property without providing adequate protection of Prescott's,**

**THPCP's, and Hyde Park Café, LLC's interests in the Property, as required by 11 U.S.C. § 363(e)?**

Section 363(e) provides: "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property . . . proposed to be . . . sold . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such . . . sale . . . as is necessary to provide adequate protection of such interest." In their motions for reconsideration as to the Original Sale Order, Appellants asserted that the Order did not provide them adequate protection. (Dkts. 3-121, 3-122, 3-123) The bankruptcy court denied these requests for reasons stated at the November 30, 2023 hearing. Specifically, the bankruptcy court found that Prescott received adequate protection in the form of a lien on the proceeds of the sale to the same extent, validity, and priority as his mortgage. (Dkt. 3-154 at 116:9-23) The bankruptcy court held that Hyde Park Café, LLC was not entitled to adequate protection. (Id. at 117:2-3)

The Court affirms the bankruptcy court's determinations as to Appellants' adequate protection. Under 11 U.S.C. § 361,

> When adequate protection is required under section 363 . . . of an interest of an entity in property, such adequate protection may be provided by . . . providing to such entity an additional or replacement lien to the extent that such . . . sale . . . results in a decrease in the value of such entity's interest in such property . . . .

11 U.S.C. § 361(2). "There is no statutory requirement that unsecured creditors receive adequate protection . . . ." In re R.F. Cunningham & Co., 355 B.R. 408, 412 (Bankr.

40

E.D.N.Y. 2006); see also In re SunEdison, Inc., 562 B.R. 243, 252 (Bankr. S.D.N.Y. 2017).

First, the Court affirms the bankruptcy court's conclusion that Prescott received satisfactory adequate protection in the form of a replacement lien on the proceeds of the sale to the same extent, validity, and priority as his mortgage under § 361(2). See In re Ayscue, 123 B.R. 28, 31 (E.D. Va. 1990). This form of adequate protection is extremely common. See also In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 513 (N.D. Ala. 2002) (noting the limitations of a § 363(f)(5) sale of collateral—*i.e.*, that such a sale is only permitted if the creditor "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest"—"provide a secured creditor with adequate protection of its interests and substantive and procedural due process").

Next, this Court affirms the bankruptcy court's finding that the terms of the Bankruptcy Code do not entitle THPCP and Hyde Park Café, LLC to adequate protection. The Option interest was not a secured lien, and unsecured creditors are generally not entitled to adequate protection. Cf. In re R.F. Cunningham, 355 B.R. at 412; In re SunEdison, 562 B.R. at 252. The bankruptcy court properly approved the trustee's sale of the Property free and clear of the Option interest because the interest was in genuine dispute. Notably, due to its disputed nature, the value of the Option interest was inconclusive.

The bankruptcy court is **AFFIRMED** as to the question of whether § 363(e) entitled THPCP or Hyde Park Café, LLC to adequate protection.

41

> **i.  Did the bankruptcy court commit legal error in finding that THPCP's or Hyde Park Café, LLC's beneficial interest in the Property was in bona fide dispute under 11 U.S.C. § 363(f)(4) such that it could properly order the sale of the Property over THPCP's and Hyde Park Café, LLC's objection?**

In their challenge to the bankruptcy court's decision to order the sale of the Property free and clear of the Option interest under § 363(f)(4), the Appellants reassert that the Option interest was not property of the estate, so the Trustee could not sell it. The Court explains why this argument is unavailing in section III.d *supra*. Next, the Appellants challenge the bankruptcy court's conclusion because Appellants assert that the Option was validly exercised pre-petition.

To find that a bona fide dispute exists, a court must determine "'whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.'" In re Gulf States, 285 B.R. at 507 (citations omitted). "[T]he court is not required to determine the underlying dispute or determine the probable outcome, rather only that a dispute does in fact exist." Id.

The bankruptcy court found that the Option interest was in bona fide dispute for several reasons. First, there was no evidence that the lease containing the Option was ever assigned to the Debtor. Thus, it was disputed whether the Debtor was obligated to perform under the Option. Second, the Option was contingent on THPCP's performance of all covenants and agreements under the lease agreement, and it was undisputed that THPCP was in breach of the lease agreement when it exercised the Option. For this reason, it was disputed that the Debtor had any obligation to perform under the Option. Third, the bankruptcy court noted that the

Trustee may have had the power to avoid the exercise of the Option under 11 U.S.C. § 544(a).[26] Based on the foregoing, the bankruptcy court determined the Option interest was in bona fide dispute.

This Court **AFFIRMS** the bankruptcy court's conclusion that an objective basis for disputing the validity of the Option interest existed. The Appellants' challenge to the bankruptcy court's conclusion rests on the Appellants' assertion that the Option was validly exercised. This assertion, however, is the crux of the dispute found by the bankruptcy court.

> **j.  Did the bankruptcy court commit legal error in finding that the Property could be sold, under 11 U.S.C. § 363(f)(5), free and clear of Prescott's interest?**

Appellants argue the bankruptcy court erred in finding that the Property could be sold free and clear of Prescott's interest under § 363(f)(5) because no evidence was presented that Prescott could be compelled to satisfy his lien for less than full payment of the debt. The trustee may sell property of the estate free and clear of an entity's lien if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). "The phrase 'could be

---

[26] Under § 544(a),

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

See In re Corzo, 406 B.R. 154, 160–61 (Bankr. S.D. Fla. 2008).

compelled' has been interpreted to mean that, on a hypothetical basis, a creditor could be required to accept money in satisfaction of its interest, not that the condition must actually have occurred." In re MMH, 385 B.R. at 371. "By its express terms, Section 363(f)(5) permits lien extinguishment if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished *without full satisfaction of the secured debt.*" In re PW, LLC, 391 BR. 25, 43 (9th Cir. 2008) (emphasis added) (quoting In re Terrace Chalet Apartments, Ltd., 159 B.R. 821, 829 (N.D. Ill. 1993)) ("If full payment were required, § 363(f)(5) would merely mirror § 363(f)(3) and render it superfluous."). "The existence of judicial and nonjudicial foreclosure and enforcement actions under state law, among other proceedings, have been held to satisfy § 363(f)(5)." In re Hamilton Road Realty, LLC, No. 8-19-72596, 2021 WL 1620046, at *5 (Bankr. E.D.N.Y. Apr. 26, 2021) (citations omitted).

The bankruptcy court found that Prescott could be compelled to accept money in satisfaction of his interest in a state court action to enforce the terms of the promissory note against the obligor, Scott. Under § 363(f)(5), it is immaterial that the hypothetical money satisfaction would potentially not fully satisfy the debt. In re PW, LLC, 391 BR. at 43. The Court cannot find that the bankruptcy court erred in making this determination.

The bankruptcy court is **AFFIRMED** as to this challenge.

### k. Did the bankruptcy court commit legal error on grounds that there is no business justification for Trustee Hyman's sale of the Property?

Appellants argue no business justification existed for the sale of the Property because the aggregate amount of the liens against the Property far exceeded the anticipated sale price. Thus, Appellants argue, the Debtor retained no equity in the Property and the sale would not benefit the unsecured creditors. For this reason, Appellants argue the Trustee was required to seek abandonment of the Property under 11 U.S.C. § 554.[27] In response, the Trustee asserts that the business justification for the approval of the sale as constructed by the settlement agreement is that the compromise provided the estate with the Carve-Out, which would be distributed to the unsecured creditors.

Appellants have not established that this issue was directly raised to the bankruptcy court. In re Gardner, 455 F. Supp. at 329 ("In hearing a bankruptcy appeal, the district court may reverse, affirm, or modify only on issues actually presented to the trial judge."). Nonetheless, the Court finds that if this issue is implicit in the myriad challenges raised, it fails. The proposed sale satisfied the requirement in § 363(b) that there is "some articulated business justification for . . . selling . . . the property outside the ordinary course of business." In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986). The Trustee proposed the Property be sold according to the terms of the compromise. The compromise guaranteed the estate would receive the Carve-Out. Absent the compromise and the attendant sale, the estate would receive nothing

---

[27] "After notice and a hearing, the trustee may abandon any property of the estate . . . that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

upon the liquidation of the Debtor's assets. The Carve-Out, therefore, was the business justification. The bankruptcy court is **AFFIRMED** as to this issue.

In this section of their appellate brief, Appellants also challenge the bankruptcy court's determination that the sale and compromise could be approved even though the compromise arguably would have an adverse effect on Prescott's interests. This challenge is best addressed by an analysis of the factors enumerated in In re Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990), which the Court discusses *infra*.

### 1. Whether the bankruptcy court committed legal error by ruling that the Foreclosure Judgment is non-final for purposes of Rooker-Feldman.

The bankruptcy court did not err by ruling that the Foreclosure Judgment was non-final under Rooker-Feldman. "The Rooker-Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001).

> The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends . . . to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000). The doctrine applies in cases where "'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Nicholson v. Shafe, 558 F.3d 1266,

1274–75 (11th Cir. 2009) (quoting <u>Exxon Mobil Corp. v. Saudi Basic. Indus. Corp.</u>,

544 U.S. 280, 291 (2005)). "'[I]f a lower state court issues a judgment and the losing

party allows the time for appeal to expire, then the state proceedings have ended.'" <u>Id.</u>

at 1275 (quoting <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del</u>

<u>Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 (1st Cir. 2005)).

Here, the state court appeal of the Foreclosure Judgment was pending at the

time the bankruptcy court made its ruling. The state proceedings had not ended.

Therefore, the <u>Rooker</u>-<u>Feldman</u> doctrine did not apply to the bankruptcy proceedings.

The bankruptcy court is **AFFIRMED** as to its determination of the applicability

of the <u>Rooker</u>-<u>Feldman</u> doctrine.

### m. Whether the bankruptcy court otherwise committed legal error as to the <u>Justice Oaks</u> factors.

Appellants challenge the bankruptcy court's determination that the <u>Justice Oaks</u>

factors weighed in favor of approving the proposed compromise. Appellants state,

> [T]he dispute that the proposed sale [and the compromise]
> purport to 'compromise' is a state court appeal between
> Wilmington's predecessor, [MTGLQ], on the one side, and
> the interests of Prescott and the equity holders of BAMC,
> on the other side. The proposed sale, and included
> Compromise, is a mechanism by which Hyman and
> Wilmington were attempting to settle the state court dispute
> on terms that are favorable to Wilmington, unfavorable to
> Prescott and the equity holders of BAMC, and a windfall to
> Hyman since he has no equity in the Property.

(Dkt. 23 at 49–50) Appellants argue Trustee Hyman "breached fiduciary duties owing

to Prescott by filing the Motion to Sell, and Motion to Compromise, which [were]

47

designed to take property away from Prescott and give it to Hyman and Wilmington . . . ." (Id. at 50)

"A bankruptcy court's order approving of a compromise or settlement is reviewed for an abuse of discretion." In re Huckleberry Partners LLC, No: 23-cv-1849, 2024 WL 4332610, at *4 (M.D. Fla. Sept. 27, 2024) (citing Daughtrey v. Rivera, 896 F.3d 1255, 1273 (11th Cir. 2018)). "'[A] bankruptcy court's approval of a settlement agreement must be affirmed unless the court's decision is (1) completely devoid of minimum evidentiary support or (2) bears no rational relationship to the evidence.'" Id. (quoting Kenny v. Critical Intervention Servs. Inc., 630 B.R. 853, 859 (M.D. Fla. 2021)).

To determine whether to approve a settlement, the bankruptcy court must consider the following factors, known as the Justice Oaks factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id. at *5 (quoting In re Justice Oaks, 898 F.2d at 1549). The bankruptcy court must "'make a pragmatic decision based on all [of the] equitable factors.'" Id. (quoting Kenny, 630 B.R. at 859)).

A district court's review of a bankruptcy court's application of the Justice Oaks factors is quite limited. Id. (citations omitted). The court reverses "only when the bankruptcy court approved a compromise that fell 'below the lowest point in the

range of reasonableness.'" Id. (quoting In re Gaddy, 851 F. App'x 996, 1000 (11th Cir. 2021)).

### i. The First Factor: Probability of Success in Litigation

In support of their challenge to the bankruptcy court's determination of the first factor, Wilmington's probability of success in the litigation, Appellants maintain the position that Wilmington had no standing to prosecute the appeal. (Dkt. 21 at 39, 41) Based on this assumption, Appellants contend it was certain that the Debtor would succeed on appeal and would incur no costs in defending it because the Trustee "could have sat on the sidelines and waited for a favorable ruling" from the state court. (Id. at 39)

The bankruptcy court heard extensive argument by the parties on the merits of the state court appeal and concluded Wilmington was likely to succeed on appeal. First, the bankruptcy court believed the argument that Wilmington had no standing to prosecute the appeal was likely meritless because of Florida Rule of Civil Procedure 1.260(c). (Dkt. 3-154 at 78–79) Rule 1.260(c) states, "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." The bankruptcy court interpreted this rule to authorize Wilmington to pursue the state court appeal of the Foreclosure Judgment in MTGLQ's name, unless the state court directed otherwise. (Id.) In doing so, the bankruptcy court dismissed Mr. Meacham's argument that Wilmington lacked standing, which he asserted was supported by Florida case law, such as Castelo

Developments, LLC v. Rawls, 118 So. 3d 831 (Fla. 3d DCA 2012). The bankruptcy court found the Debtor's case distinguishable from Castelo because here, MTGLQ transferred its interest in the mortgage and note to Wilmington, where in Castelo, the transferred interest was fee simple ownership of the property.

Believing Wilmington likely did have standing to prosecute the appeal, the bankruptcy court noted that it would be "preposterous" if the state court's denial of Wilmington's motion to amend the Foreclosure Judgment to include post-judgment fees, costs, and interest meant that such fees, costs, and interest would not accrue. (Dkt. 3-154 at 74:8–75:1) The bankruptcy court believed Florida case law supported its conclusion. See Tamblyn v. River Bend Marine, Inc., 837 F.2d 447 (11th Cir. 1988).

This determination was not "completely devoid of minimum evidentiary support." In re Huckleberry Partners, 2024 WL 4332610, at *4 (citations and internal quotations omitted). "In applying the Justice Oaks factors, the bankruptcy court is not required to assess the merits of the settled claims and must only consider the probability of those claims' success." Id. at *6 (citing Justice Oaks, 898 F.2d at 1549). Justice Oaks did not require the bankruptcy court to resolve the parties' dispute on appeal with absolute certainty. The bankruptcy court's task was to assess the probability of Wilmington's success in the litigation. The Court cannot find clear error in the bankruptcy court's determination of the first factor.

### ii.  The Second Factor: Difficulties in the Matter of Collection

Next, Appellants argue the bankruptcy court should have determined the second factor, the difficulties in the matter of collection, to be neutral because "Hyman

50

was not collecting anything." (Dkt. 21 at 41) Appellants maintain "Hyman had no equity in the Property and should have abandoned it a long time ago, as he was required to do" under § 554. (Id.)

In considering the second factor, the bankruptcy court noted that absent the compromise, the unsecured creditors "would not get a dime," thus, "there would be nothing to collect." (Id. at 75:13-14) On this basis, the bankruptcy court found that the second factor weighed in favor of approving the compromise.

The Court finds the bankruptcy court's determination was supported by the evidence. Appellants' challenge ignores that the proposed compromise and sale were likely to result in the full satisfaction of the obligation to the first-priority secured creditor, cash to the estate for distribution to unsecured creditors, and a distribution of remaining proceeds to Prescott and the junior secured creditors. Throughout the bankruptcy, the parties and the court acknowledged that the Property was likely to garner at least $400,000 at an auction sale—perhaps more. Thus, the bankruptcy court believed it likely that the proposed compromise and sale would satisfy Wilmington's allowed claim and result in payment of the maximum Carve-Out to unsecured creditors. Absent the compromise, however, the bankruptcy court believed it likely that Wilmington's claim would eat up nearly all the equity in the Property. Prescott, as the second-priority lienor, would receive a nominal amount, if any, and the unsecured creditors would receive nothing.

Appellants misconstrue § 554, which *permits* the trustee to abandon property that is of inconsequential value and benefit to the estate. 11 U.S.C. § 554(a) (emphasis

added) ("[T]he trustee *may* abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."). The Trustee here determined that the Property was of value and benefit to the estate; by settling with Wilmington, the estate received the Carve-Out.

The Court finds no clear error in the bankruptcy court's consideration of the second factor.

### iii.  The Third Factor: Complexity of the Litigation

Appellants assert the bankruptcy court erred in finding that the expense and delay necessarily attending the litigation weighed in favor of approving the compromise. This assertion is based, again, on Appellants' assumption that the state court appeal was likely to be dismissed because Wilmington lacked standing to pursue the appeal. (Dkt. 21 at 42)

In weighing the third factor, the bankruptcy court found that the expense, inconvenience, and delay necessarily attending the appeal weighed in favor of approving the proposed compromise because forcing the appeal to go forward would result in delay and in Wilmington continuing to incur expense. (Id. at 75:15-20)

This determination was supported by the evidence. Indeed, for the state court appeal to proceed, Wilmington or the Trustee would have had to respond to the Debtor's equity's motion to dismiss the appeal for lack of standing before reaching the substantive issues on appeal. The Debtor's equity would have put up a fight, as it is here. The Court finds the bankruptcy court properly weighed this factor in favor of approving the compromise.

### iv.  The Fourth Factor: The Interest of the Creditors

Finally, Appellants argue the bankruptcy court improperly weighed the fourth factor, the paramount interest of the creditors and a proper deference to their reasonable views, in favor of approving the compromise because the compromise "took" the Carve-Out "from Prescott" and gave it to unsecured creditors. (Dkt. 21 at 45) Appellants argue "Hyman had no equity in the Property to bargain with and, thus, appears to have received a $64,187.00 windfall." (<u>Id.</u>) Appellants also challenge the bankruptcy court's conclusion to the extent it is based on findings that Prescott's mortgage was potentially invalid or his claim was not timely filed.

In considering the fourth factor, the bankruptcy court noted that the proposed compromise would benefit the unsecured creditors because without the compromise, it was extremely likely that Wilmington's uncompromised claim would exceed the settlement amount. The bankruptcy court roughly calculated Wilmington's minimum actual claim to equal $334,632.61. This sum included: the amount of the Foreclosure Judgment; post-judgment interest at an estimated statutory rate; property taxes and insurance paid on the Property by Wilmington or its predecessors-in-interest through 2022; an estimated amount of a portion of attorneys' fees incurred post-petition of only $10,000; and an amount of attorneys' fees incurred post-judgment, pre-petition that Wilmington included in its proof of claim. The bankruptcy court also noted that the calculation did not include all attorneys' fees Wilmington had incurred, and that Wilmington would continue to incur attorneys' fees and costs if a compromise was

not reached. The bankruptcy court determined that, absent the proposed compromise, Prescott was either going to be out of the money entirely or stood very little to gain.

The Court cannot find clear error in the bankruptcy court's consideration of the fourth Justice Oaks factor. First, Appellants' characterization of the state court appeal is inaccurate. The appeal was between Wilmington, as MTGLQ's successor, and the Debtor. The bankruptcy court never granted stay relief to Prescott or the Debtor's equity to defend their interests in the state court appeal. Any attempt by them to do so violated the automatic stay. Likewise, Appellants inaccurately characterize the Carve-Out as "a windfall to Hyman." The Carve-Out inured to the benefit of the Debtor's estate for distribution to the unsecured creditors, not to the Trustee.

Next, this Court determines that the bankruptcy court's calculation was accurate, save for a mistake in the estimated accrual of post-judgment statutory interest.[28] Adjusting for this error, the sum equals $331,251.07. Noting that the amount of attorneys' fees included in this calculation equals only $31,508.00, and that Wilmington and its predecessors-in-interest have been prosecuting their interest in the Property since 2013, the Court cannot find that the bankruptcy court clearly erred when it concluded that Wilmington's actual claim was likely to exceed the settlement amount of $391,454.37 if a compromise were not reached.

---

[28] In its rough calculation, the bankruptcy court adjusted the interest rate applicable to the Foreclosure Judgment each quarter. Even though the statutory rate of interest changes from quarter to quarter, the interest rate applicable to a given judgment only adjusts once a year. See § 55.03(3), Fla. Stat. (2024) ("The interest rate is established at the time a judgment is obtained and such interest rate shall be adjusted annually on January 1 of each year in accordance with the interest rate in effect on that date . . . until the judgment is paid . . . .").

The bankruptcy court reasonably determined that the compromise satisfied Wilmington's allowed claim and provided the unsecured creditors with a distribution that would not otherwise have been possible. The bankruptcy court gave proper deference to Prescott's position but determined, based on the bankruptcy court's calculation, the compromise would have little effect on his recovery. Thus, with respect to Prescott, the compromise was nonetheless reasonable. In re Huckleberry Partners, 2024 WL 4332610, at *4 (In re Gaddy, 851 F. App'x at 1000).

In sum, the Court does not find that "the bankruptcy court approved a compromise that fell 'below the lowest point in the range of reasonableness.'" Id. Thus, the bankruptcy court is **AFFIRMED**.

### n. Has there been a systematic violation of Appellants' right to due process of law?

Appellants represent in their brief, "Appellants will be filing a Motion requesting the Court's permission to bring together" the facts stated in each of their appellate briefs, (Dkts. 21, 23, 24), "in a five (5) page argument to show the systematic violation of due process since March 6, 2023[.]" (Dkt. 24 at 32) Appellants never filed such a motion. Since Appellants never submitted an argument as to this issue, the Court declines to consider it.

## IV.    CONCLUSION

Accordingly, the Court hereby **ORDERS** as follows:

1. The Final Sale Order, (Dkt. 3-143), is **AFFIRMED**.

2. The Order Approving Compromise, (Dkt. 3-140), is **AFFIRMED**.

3. The Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 11th day of March 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE